■  PATRICIA SLOCUM, Individually and as Parent and Natural Guardian of KIMBERLY SLOCUM, an Infant, and as Administratrix of the Estate of KAREN SLOCUM, Deceased, Respondent, v HAROLD O. WILTSE, Respondent, SULLIVAN MOTOR LINES, INC., Appellant, and INTERSTATE SYSTEM, Respondent-Appellant. (Action No. 1.) LARRY C. SLOCUM et al., Respondents, v HAROLD O. WILTSE, Respondent, et al., Defendant, SULLIVAN MOTOR LINES, INC., Appellant, and INTERSTATE SYSTEM, Respondent-Appellant. (Action No. 2.) INTERSTATE MOTOR FREIGHT SYSTEM, Respondent, v SULLIVAN MOTOR LINES, INC., Appellant. (Action No. 3.)—Appeals from judgments and subsequent amended judgments of the Supreme Court in favor of plaintiffs in Actions Nos. 1 and 2, and in favor of plaintiff in Action No. 3, entered December 11, 13, 20, and 29, 1978 and January 5 and 17, 1979 in Broome County, upon a decision of the court at Trial Term, without a jury. These actions arise out of a motor vehicle accident which occurred on Interstate 81 near Cortland, New York, on January 18, 1976, involving a car owned and operated by Larry O. Slocum and a tractor trailer owned and operated by Harry O. Wiltse. Wiltse's tractor trailer was leased to Sullivan Motor Lines, Inc. (Sullivan) under an equipment lease signed by Wiltse on December 13, 1975. At the time of the accident, the tractor trailer was being used by Wiltse to haul steel from Auburn, New York, to Camden, New Jersey, for Interstate System (Interstate) pursuant to a "Trip Lease" which Wiltse entered into with Interstate on January 16, 1976. Action No. 1 was brought against Wiltse, Sullivan and Interstate to recover for injuries sustained by Slocum's daughter, Kimberly, and for the death of his daughter Karen, both of whom were passengers in Slocum's automobile at the time of the accident. Action No. 2 was brought against Wiltse, Sullivan and Interstate to recover for the injuries sustained by Slocum and his wife for the loss of her husband's services. Action No. 3 was brought by Interstate solely against Sullivan to recover contractual indemnity against Sullivan under the hold-harmless clause in the trip lease between Wiltse and Interstate. At trial, counsel for all the parties stipulated that the accident was caused by the negligence of Wiltse and that Slocum and the members of his family were free from contributory negligence. It was further stipulated that the assignment of liability and the legal relationship between Wiltse, Interstate and

Sullivan be litigated by the court without a jury. The court found that Wiltse signed the trip lease with Interstate as the authorized agent of Sullivan and, therefore, Sullivan was liable for the accident under the doctrine of *respondeat superior*. The court further found that at the time of the accident, Sullivan was the "owner" of the Wiltse tractor trailer within the meaning of section 128 of the Vehicle and Traffic Law, and imposed liability on Sullivan under section 388 of the Vehicle and Traffic Law. Judgment was granted in favor of Interstate pursuant to the hold-harmless clause contained in the trip lease. Sullivan appeals from the judgments, as amended and resettled, entered against it in all three actions. The primary issue is whether the trial court properly found that Wiltse was authorized to act as agent for Sullivan in executing the trip lease with Interstate. There should be an affirmance. Initially, we reject Sullivan's contention that its lease with Wiltse limited the right to sublease the tractor trailer to Sullivan and that Wiltse had no authority to execute the trip lease with Interstate as an authorized agent of Sullivan. The lease provided that "CARRIER [Sullivan] may sublease the Equipment when permitted by applicable law and regulations and CARRIER shall be considered as OWNER for the purpose of any such sublease. Neither party may assign this lease." Contrary to Sullivan's contention, this provision did not prohibit Wiltse from trip leasing his tractor trailer. It merely granted Sullivan the right to sublease and to be considered as owner for the purpose of such subleasing. Next, the record establishes that Wiltse was authorized by Sullivan to execute the trip lease with Interstate on Sullivan's behalf. There was testimony that Ronald Moth had been appointed a commission agent by Frank Blackowicz, a representative of Sullivan, to generate business for Sullivan in the Syracuse area. Sullivan had no authorization from the Interstate Commerce Commission to haul freight from that area. Blackowicz was identified by Moth and by John Mangine, Director of Safety Compliance, Special Services with Sullivan, as key agent for Sullivan and had the responsibility for recruiting subagents for Sullivan. Blackowicz issued Moth lease forms, inspection forms, and checks that could be drawn on a Sullivan account. Moth further testified that Blackowicz instructed him to sign up trucks on a permanent lease basis and indicated that Sullivan allowed its drivers to trip lease. The uncontradicted testimony supports the conclusion that Moth was an agent of Sullivan. Blackowicz gave him authority to generate business, recruit drivers, draw checks on Sullivan's behalf, and permit its drivers to trip lease. The record also discloses that most trip leases contained hold-harmless agreements. We agree with the trial court's decision that Blackowicz authorized Moth to grant permission to its drivers to enter into trip leases containing such agreements. Pursuant to Blackowicz' instructions Moth entered into an "Equipment Lease" with Wiltse, in which Sullivan was given the "exclusive possession, control, use and responsibility" of the vehicle. There was testimony that in signing Wiltse as a Sullivan driver, Moth followed all the procedures required by Sullivan, which included a written test, completion of an employment application, and a vehicle inspection. Moth testified that he mailed the completed forms to the Sullivan office in Pittsburgh and received permit numbers for Wiltse's truck. Mangine testified that Wiltse's application had been "approved" and filed at Sullivan's office in Pittsburgh. Finally, the record contains a lease between Sullivan and Wiltse executed five days before the accident which acknowledges Wiltse to be a permanently leased owner-operator. After the accident, Mangine told Moth that Wiltse's truck was no longer permanently leased. In connection with Wiltse's testimony that he had authority to trip lease, Moth testified that he

informed Wiltse that trip leasing was permitted. Wiltse also testified that he was paid by Sullivan for the trip lease work that he had done. The record also contains evidence that Sullivan engaged in a course of conduct in which it had honored trip leases made between its drivers and Interstate. Irving Shapiro, assistant to the president and general manager of the steel division of Interstate, testified that Sullivan drivers often entered into trip lease agreements with Interstate. Interstate introduced into evidence 20 manifest and trip lease documents executed by Sullivan drivers and Interstate agents, each of which contained the same hold-harmless clause as in the case at bar. Furthermore, Sullivan received the benefit of trip leases executed by its drivers with Interstate and produced no proof that it prohibited its drivers from trip leasing where the trip lease contained a hold-harmless provision. This uncontradicted testimony supports the trial court's conclusion that Wiltse had actual authority from Moth to trip lease on behalf of Sullivan. The trial court properly recognized the economic benefit to Sullivan which resulted from permitting its owners to trip lease out of the Syracuse area in order to avoid transporting unloaded trucks. In this connection we note that an agent of Sullivan had arranted for Wiltse, upon completion of the Camden trip, to pick up a load for Sullivan in Frederick, Maryland, and deliver it to Oswego, New York, which is in the Syracuse area. Finally, Sullivan contends that the trial court also erred in concluding that it was the "owner" of the tractor trailer operated by Wiltse within the meaning of section 128 of the Vehicle and Traffic Law. The term "owner", as defined in the statute, includes a lessee of a motor vehicle having the exclusive use thereof under a lease for a period greater than 30 days. Pursuant to the equipment lease, Sullivan had the right to the exclusive possession, control, and use of Wiltse's tractor trailer for a period greater than 30 days. Therefore, the trial court could properly find that the trip lease was entered into between Wiltse and Interstate in the exercise of this right. Judgments affirmed, with one bill of costs to respondents filing briefs. Greenblott, J. P., Sweeney, Main, Mikoll and Herlihy, JJ., concur.